Case No. 19-1069 American Federation of Government Employees AFL-CIO Local 1929 Petitioner v. Federal Labor Relations Authority Mr. Millage for the Petitioner, Mr. Peters for the Responder Petitioner v. Federal Labor Relations Authority Petitioner v. Federal Labor Relations Authority May it please the Court, my name is Matthew Millage. I represent the American Federation of Government Employees Local 1929. In this matter, the Court should grant Petitioner's petition in this case for three reasons. The Authority's decision is contrary to the tax structure and purpose of Section 7103A14 and the statute itself. Even if the Authority's decision weren't contrary to the statute, which it is, the Authority's interpretation is unreasonable. And finally, the Authority's proffered reasons in support of the decision cannot withstand scrutiny. Starting with the tax structure and purpose of the statute, the text of Section 7103A14 states that conditions of employment means personnel, policies, practices, and matters affecting working conditions. Here, the Authority notes and finds that there was an agency memorandum that affected working conditions, but they found, nevertheless, that it didn't affect conditions of employment. That cannot follow from the plain text of the statute. How did you get the first part, that the Authority found that there was a change that affected working conditions? One thing is that clear on whether the rationale was that there's an effect on working conditions, but it nonetheless doesn't carry over to conditions of employment, or whether it is that there wasn't an effect on working conditions to begin with, and therefore, of course, it doesn't carry over to conditions of employment. Well, Petitioner's reading is that the Authority's decision in this case is that there was an agency memorandum that affected working conditions, but those did not rise to the level of conditions of employment. Right. And where are you getting the first part? I'm not saying that's necessarily wrong. I'm just saying what's the best indication that that was the Authority's conclusion? Yeah. It's from the beginning of their decision. Uh-huh. Okay. So I believe it's the second paragraph from their decision. Yeah. On the specifically sentence? One moment, Your Honor. Where they say, specifically, yes, the issuance of a memorandum which affects working conditions, but not conditions of employment, does not constitute a change over which CBP must bargain. Right. And they're setting out their legal conclusions. Because the decision sort of proceeds in two phases. First, there's a legal decision that we're going to part ways with what we've been doing before. Here's our new understanding. And then the second part is here's the application of that understanding. And you read those to be harmonious and specifically to cover both of them? I read that as the only way of having this decision having a modicum of sense to flow from it. Because if there was no change, if the memorandum did not affect working conditions or did not change working conditions, there's no need for any change in precedent. Because the memorandum didn't affect working conditions, you don't get there in the first place. And so it only follows for me that in order for them to reach that, they must first have determined that there was a matter that affected working conditions, but did not also affect conditions of employment. What are working conditions? What are working conditions? So the statute doesn't define what working conditions are. This opinion doesn't. The agency's or the authority's opinion doesn't define what a working condition is, does it?  It just says it's different than a condition of employment. But we still don't know. That is correct. The decision itself does not specify. Would you agree that all work is not necessarily employment? Excuse me, Your Honor? You would agree that not all work is necessarily also employment? If I go out and cut my grass on working, but I'm not employed, right? I would not agree for the purposes of this statute that that is correct. Under the facts of this case... What is employed? Employed means to hire somebody to do work. That is the common meaning of the word employed. So if I'm doing work without having been hired by anybody, I'm not employed? That is correct, Your Honor. However, as the statute... Whether that means there's a difference or not is not clear to me, but I just come back to the point. Yeah, right. Fine. We can say not all work involves employment, but all employment involves work, right? But that doesn't... I don't know where that gets me in this case. Yes, Your Honor. Well, under the statute, under Section 7103-814, which is at issue in this case, conditions of employment is defined to mean personnel policies, practices, and matters affecting working conditions. And so the distinction between conditions of employment and working conditions is not really helpful here, because once you have determined that a matter affects working conditions under the statute itself, under Section 7103-814, it is a condition of employment. Well, unless it doesn't come from a personnel policy, practice, or matter. That is correct. That's the bridge. That is correct. And in this case here, the agency issued a memorandum, which is found at Joint Appendix 1, that changed the working conditions because it changed how the Border Patrol agents conducted inspections at the checkpoint. It required multi-occupant vehicles containing at least one non-U.S. citizen who presented some form of immigration document to be automatically sent to the secondary for inspections. And as the arbitrator found, that changed the working conditions of those agents at the primary and the secondary inspection areas. But that doesn't necessarily – now, I'm not saying this is in the decision, because I'm not sure that it is. I'm not sure that it's not, but I'm not sure that it is. But that doesn't mean that that document is a personnel policy, practice, or matter. Well, there's no – that is not an issue here, because there's no finding from the authority that that wasn't a personnel policy, practice, or matter. There's nothing in the authority's decision finding that it wasn't. However, the arbitrator did. The arbitrator did find that that was a change in agency policy. And there's nothing in the authority's decision contrary to that. Your Honor, as I see it, I'm starting to go over my time, so unless you have any more questions. I have one more question that is meant to inquire about your understanding of the decision. So one thing that I found interesting about the decision is that when it turns from setting out the legal change, the legal change which is that we're no longer going to treat working conditions and conditions of employment as the same thing, we're going to treat them as different. And then it goes to the application of – to the circumstances of this case. There's a reliance on precedent. And that's what the authority is pinning its argument to here. So, yes, Your Honor. There's some prior cases. And I'm just wanting to know what your interpretation is of what seems to me to be a little bit of a disconnect to say, we're doing something different, so we're announcing that we're doing something new. And then in applying it, actually we're relying on something we've been doing all the time. We're doing something old. And it wasn't clear to me how you go from saying that we're switching gears here to saying now we're relying on an old gear that's always been in place. Well, Your Honor, Petitioner is in agreement with that. We don't think the authority applied the new test at all in this case. The authority says they're going to announce a new case, but as far as we can see, there is no application of that test to the facts in this case. Instead, they point to precedent, and they misrely on that precedent. The very first case, they relied on three cases for a proposition that a mere increase in workload doesn't constitute a change in conditions of employment. However, the facts in the three cases cited are vastly different from the facts here. The facts in those three cases cited by the authority were cases where there were external factors that caused the change in working conditions. So you may be right. If you're right about the way you're looking at that, I'm not necessarily saying you are, but if you are, then any complaints you have about the first part of the decision where there's been a shift in the legal outlook are just irrelevant from your perspective because that wasn't applied to the second half anyway, right? So from your perspective, it's kind of just – is one of the primary reasons we're here. The authority's announcement that a manner – But it had no effect on the decision. I mean, I totally agree with my colleague that if on the one hand you say we're changing the rule, and on the other hand we're following cases that were decided before our change in the rule, then who cares about whether the rule's changed? Well, Your Honor – This case comes down – it seems to me – tell me – I know you didn't – your brief doesn't say this, but is a workload increase initiated by the agency a change in working conditions? If the answer is no, then you lose. If the answer is yes, then you win. Well, Your Honor, I don't believe that's the issue here. This is not an increase in workload case. This is a change in an agency, personnel, policy, practice, or matter affecting working conditions subject to bargaining. That is the petitioner's argument here, is that, one, there was a change to personnel, practice, or matter affecting working conditions, and that it's bargainable. It's not that whether there's an increase in workload, that is not the petitioner's case here. It's that the agency issued a memorandum that made a change to the working conditions – And the statute doesn't require a change. That is correct. However, we've gotten wrapped up here in the meaning of conditions of employment and working conditions. The authority that's present that I believe is undisputed here, that a change in conditions of employment is subject to bargaining, barring certain exceptions that are not relevant here. And that's never been an issue in this case. The only issue here has been whether the facts in this case constituted a change in the conditions of employment. So I see a matter – Let me ask you. I see you have at least two problems. One, these primary and secondary inspection point inspectors could be doing one job at the primary one day and the secondary at the next, right? In other words, they weren't assigned. If your argument is, well, the secondary is getting a lot more work when a primary could be a secondary the next day. I see that as one problem. The other problem I see is that you make the argument that there's a loss of discretion in the primary inspectors because now if there are two occupants, one's a U.S. citizen, one isn't, they have to send that car to the secondary inspection point. But the memo itself, if you have it in a third paragraph, tells the inspectors, you may modify this direction in order to accommodate local residents, daily commuters, so forth. You may also modify this direction when safety to the public and our agents may be an issue. But you are highly recommended to staff full-time secondary physicians. That doesn't sound like a great loss in discretion to me. Well, Your Honor, to address your first point, one of the issues that is raised in the petitioner's argument and is found by the arbitrator below is that this change create safety issues, reasonable safety issues that were foreseeable because of increased traffic in the secondary area. And safety is a working condition. And so a memorandum which negatively impacts the safety of those employees because of an agency change and how inspections are handled and processed. And they're given discretion. You may modify this direction when safety to the public and or our agents may be an issue. And at the arbitration, it became clear that from the agents, there was a lack of clarity from their supervisors about what actual authority they had to modify anything. It's also clear from the arbitrator's decision that the supervisors never fully staffed the secondary area. And that's a point that the arbitrator makes, is that the agents never staffed the secondary area. When you're pointing to the arbitrator's decision, I mean, I guess what we're reviewing is the authority's decision. And so one question is whether the rationale that could sustain the result is actually manifested in the authority's decision. And I take it one point you could make is. There's not. That rationale doesn't find itself in the authority's decision, even if it's available, based on what Judge Henderson has pointed out. I see I'm a little over my time. Thank you. Mr. Peters. Can I ask you right off why you didn't argue that what I see is actually not a loss of discretion, or at least make that argument? May it please the Court. Noah Peters for the Federal Labor Relations Authority. To start out with that, I think that that understanding is implicit in the authority's determination that there was no change in actual primary lane agent duties or secondary lane agent duties. That is, their responsibilities as before dealt with conducting immigration inspections, conducting facial comparison tests, and directing traffic. And as we did argue, there was in our brief, there was still substantial discretion built into the memo. And there's also in the testimony in the record, there's substantial discretion for the agents to modify and to deviate from this policy. For example, during holidays when there's a lot of traffic, when the secondary lane becomes too backed up. That's apparent, I think, in the authority's finding that there was no change here to what the border control agents were actually doing on a day-to-day basis. What was happening was you have two sites where work is performed, basically. You have a primary lane and you have a secondary lane. And so there are circumstances, this changed in perhaps some cases, the circumstances where you would be sending a vehicle to the secondary lane. But the fact is the same things were occurring in the primary lane as in the secondary lane. So the agents were conducting facial comparison tests in the primary lane. The reason for the policy, as the testimony demonstrated, was just so agents would have more time to conduct the same facial comparison test that they were already conducting in the primary lane. Now, as far as directing traffic, that was something that the agents had always done. They always have to make judgment calls about, well, is there too much traffic in the secondary lane now? Is this posing a safety hazard? And I think those types of ‑‑ So within, from the perspective of the language of the statute, which is ultimately what we have to deal with in some measure, I'm having a hard time understanding what the authority's rationale was. There's a bunch of points in the authority's decision, but I honestly, I'm not sure I understand how it marries with the language of the statute because there's several rationales by which one could get home in the direction that the authority went. But it's just not clear which route they're taking. Are they saying that there's not an effect on working conditions to begin with? Are they saying that there's an effect on working conditions, but it's not one that's born of a personnel policy, practice, or matter? Are they saying that even though there's a change in working conditions that's born of a personnel policy, practice, or matter, it's still not an effect on conditions of employment? I'm not understanding which route the agency's taking. Well, I think, so there's, I think as you correctly pointed out before, right, there's an interpretive dimension of this decision where the authority's clarifying the meaning of the statutory phrase conditions of employment, and it's saying that previous authorities had said that the meaning is so broad of conditions of employment that it substantially means the same thing as working conditions, right? So whenever there's a change in working conditions, there is necessarily changing conditions of employment. I think the authority's saying it's a matter of interpretation. We're going to clarify for the benefit going forward that that is just not the case, that there's other words in the statute, that, you know, conditions of employment means personnel policies, practices, and matters affecting working conditions. So we're not going to give it this wholly circular definition where conditions of employment just means working conditions. And, you know, as Judge Randolph properly pointed out, working conditions is not a defined term in the statute, so that ends up being a very kind of loose standard. And I don't think that the authority had consistently followed that in previous cases, right? It had said that there were some changes. But what does that have to do with this case? Because if, I mean, I think one can understand the argument that under the statute, if you have a change in working conditions, it doesn't necessarily mean an effect on conditions of employment because it has to be a change in working conditions that comes from a personnel policy, practice, or matter. But for that to have any resonance with this case, it has to mean that, well, this case doesn't involve a personnel policy, practice, or matter. Or else I don't understand why we're even talking about the first part of it. But then when you look at the second part of the decision, there's nothing in there that tells you that really what's going on here is we're not talking about a personnel policy, practice, or matter. And therefore, even though there's a change in working conditions, it still doesn't translate into an effect on conditions of employment. It's not that language, the effect, the effort to marry it to the language of the statute just isn't apparent to me. And then what's said doesn't necessarily marry to that kind of logic either. Well, I think, again, what the authority is doing is it's making an interpretive point and it's applying the language of the statute. And this conceitedly ambiguous statutory provision to the complexities of the facts of the case. That's not what the decision says, that it's ambiguous. It says this is plain language. Right. What is the plain language meaning of condition of employment? I think what the authority is saying is it's giving effect to all the words within the definition. So it's saying it's a personnel policy, practice, or matter that affects working conditions. So it's saying that basically in this case there is no change to what is involved in this case is not a change to a personnel policy, practice, or matter. Let me give you a hypothetical. Let's suppose that rather than the situation here, we have an assembly line with a conveyor belt and employees on either side of the line making widgets. And one of the jobs is to put a spring on the widget. And the quota is 60 widgets an hour. With me so far? A time and motion guy comes by and says to the line foreman, hey, that's too slow. Double it. So they double it to 120 widgets an hour. Is that a change in working conditions? I think that... It's got to be. It would be something that would affect working conditions, certainly. So all this language in this opinion says, well, the duties weren't changed because they're still doing the same thing. The employee on the conveyor belt that we just talked about is still doing the same thing. She's putting a spring on a widget. But she has to do twice as much work. And isn't that something that unions constantly bargain over? Right. I think an increase in workload, the authority's decisions have been clear. Standing alone does not trigger a change in conditions of employment. Why not? Because it doesn't change the nature or types of duties that they're performing. Now, in this case, I think that there's the... But I don't understand that because if it does change working conditions, which you just agreed, I think, and you have to, that it does, because the hypothetical, obviously, there's a change in working conditions. And the only way under the statute it doesn't translate to conditions of employment is if it doesn't have anything to do with the personnel, policy, practice, or matter. It's not about nature of duties. We already know that there's an effect on working conditions. So the only way you keep it from going to conditions of employment is if you say, well, it may have affected working conditions, but it didn't come from a personnel, policy, practice, or matter. Isn't that the only route left? I think the way that you get there is, in this case, the record showed very clearly that the agency had an established practice of modifying the inspection procedures in response to mission and workload fluctuations. So you have undisputed evidence that there were constantly being made changes to the way that inspections were conducted and prioritized over a period of decades, and there was no bargaining obligations. The practice had been that that didn't trigger bargaining obligations because they had an established practice of making those adjustments to inspection procedures that made changes but did not change the actual conditions of employment. And I think this is an area where, and I think this is also the CBP Tucson case, which is, I think, on all fours, which the authority had decided, where there was a change, right? They started moving about, they had a practice before that where aliens were apprehended was where they were processed, and then the agency made a change where they start sending about half of those aliens to another station, and there's similar concerns. I have to say I don't follow it, and maybe I'm just being dense. But, for example, you have a sentence on page 27 of your brief that is characterizing these precedents, CBP Tucson and the Eglin case. And it says, both CBP Tucson and Eglin AFB involved changes to agency policies that changed the working conditions of employment but did not change their conditions of employment. I don't understand how that's even possible, because under the statute, if it's an agency policy, and let's just say it's an agency personnel policy, because I don't hear any dispute about that, that changes working conditions, and under the statute, that's a condition of employment. It just follows like the night follows the day. Yeah. First off, I don't think we don't concede that it is a change in a personnel policy or practice, because I think you have to look at the fact, too, that this is directed ultimately at supervisors. This is a memo that's not directed at the actual unit employees. This is a memo to supervisors saying, hey, instruct the employees to do this going forward. Okay. I don't see that rationale in the authority's decision. Are you saying that the authority relied on that rationale? That rationale at least makes textual sense to me of the statute. At least it's an effort to say. The authority said that because it said that this is basically a change in how supervisors are directed to prioritize and conduct inspections. This is a supervisory direction, in other words, that is meant to kind of adjust inspection procedures. That is part of the authority's decision. I think that that's clear, is that this is not something that's directed to actual unit employees. It's saying this is actually directed at managers to how the actual unit employees prioritize inspection procedures. But wouldn't that have been a better answer to Judge Randolph's hypothetical? That is, okay, you now have to do ten times as many widgets, but that comes under assignment of work, and that is specifically cut out from conditions of employment, working conditions. That section says nothing affects or that doesn't affect the reserve manager's right to assign work. Yes, and I think also you have to look at the fact, too, that this is ultimately whether the conditions of employment have been changed. It is now and has ever been a case-by-case determination. So you just look at is there substantial evidence in the record that supports the authority's determination, and did the authority present a reasonable interpretation of the statutory term? And so I think as far as getting into this fine-grained case-by-case determination of how the authority is going to apply this in the future, that's for the authority to determine. And I don't think that the authority is making an interpretive point, and it's saying that conditions of employment has to mean something a little bit different than working conditions, because working conditions is part of a law definition. I just want to follow up on Judge Henderson's question. Is it your position that the statute exempts from bargaining the assignment of work? I think it is. It's the classification of a position that's exempted, not the assignment of work. In both cases, there has to be a change. The key issue in all the cases is whether there's a change in conditions of employment, because if there's no change in conditions of employment, there's no bargaining obligations at all. And so I think that what— I can understand your position if, in fact, for example, a caravan of 10,000 people show up at the El Paso border, and suddenly the inspectors are overwhelmed. I mean, it's silly to say, well, they're entitled to bargain because their workload has increased. The point is that if their workload is increasing as a result of some policy or practice or matter that the agency puts on them, that's a different matter, a different question. Right. I think here the—so you look at what is the relevant change that has occurred. Is it a change in the kind of external circumstances, or is it something that's wholly agency-generated? And here I think with the CBP, with the Border Patrol, there's always going to be—you know, this is a fast-changing environment. So here there was specific intelligence that people were using imposter documents to try to get through the Border Patrol checkpoints. So they made—and there was an established practice by the agency of making changes in inspection procedures in response to external events. So the authority held, in light of the substantial evidence in the record, that this was not an actual change. That's a good argument. Unfortunately, I don't see that in the authority's opinion. Well, I think the authority was getting there. I think the authority was looking—I think the authority said, you know, it made it careful. It was careful to note that there had been an established practice at the agency level of making these changes to inspection procedures. And I think it does have the point that there was an element—there was always an element here of, this is a matter of directing the supervisors on how the employees are to conduct prior code. You know, you keep coming back to that, and I keep asking myself, the statute doesn't require a change in working conditions. It just requires a practice that affects working conditions. So you could have a situation where things are going on quite wonderfully for a decade, according to a particular memo and so on and so forth. That does not exempt it from bargaining. It's not a change. Maybe I'm misreading the statute. It doesn't use the word change. Right. The authority, I think, has pretty consistently said that there has to be a threshold of change, that what you bargain over ultimately is the change in the conditions of employment. And so you have to look at what is the relevant level of bargaining here that has to take place, right? So anything that happens day-to-day or month-to-month or year-to-year workload fluctuations or mission fluctuations can change the employee's working conditions in many ways. So consider, for example, an employee has to work, you know, three Saturdays in a row overtime pursuant to a shift assignment procedure that has already been bargained over. Well, in that case, there has been a change to the employee's working conditions. They had never had to work two consecutive Saturdays in three years, but now, you know, they are. So does that trigger bargaining obligations? If the shift assignment procedure pursuant to which those shifts are assigned has already been bargained over. And I think the authority has said no in that case. We're not going to require bargaining every time that something, there's arguably some sort of change that affects working conditions. So the authority said that to some extent in prior cases, right? Yes. One thing that still confuses me about this decision is the authority expends a good deal of energy in the first part announcing a change in the way it's interpreting things. And then in the last part, it's relying on precedence, which by definition can't have incorporated that change because ostensibly the purpose of this opinion is to announce a new regime. Right. So I don't understand what the first part is even doing if the second part is grounded in precedent. I think that's fair. I think the background is that the authority had that dicta where they say in some cases, you know, we've given conditions of employment such a broad meaning that it essentially means the same thing as working conditions. I think if you look at the authority's decisions, especially the concurring opinions from Chairman Kavanagh that I was referring to, she's making the point. The authority is actually making a distinction here between conditions of employment and working conditions. In those previous cases, like Eglin Air Force Base, she writes a concurring opinion and says, hey, let's pay attention to the fact that we're not actually giving conditions of employment and working conditions the same meaning. So what the authority is saying is going forward, we just want to be clear. We are distinguishing between. We are not holding that everything that affects working conditions changes the conditions of employment. We're going to try to give meaning to all of the terms in the statute. And so I think that it's not that the authority is trying to announce a major change in the case law. I think the authority is more clarifying the results of previous cases and saying, we're going to try to be clear going forward here that there is a difference, that we are going to try to give effect to all the words in the statutory definition. And if there's no further questions, I'll submit. Thank you. Does Mr. Milledge have any time left? Mr. Milledge does not have any time left. All right. Why don't you take two minutes. Thank you, Your Honor. So I have a couple brief points I'd like to address. I think the first thing is to point out the main distinction in this case versus the multiple cases that were cited in the authority's decision and in the authority's brief, specifically NTU v. IRS, Department of Veterans Affairs, Medical Center Sheridan v. AFGE, and CBV Tucson v. AFGE, and then finally AFB, Air Force Base Eglin, is that in each of those cases the authority found that the agency did not take an action that changed working conditions. In each of those cases, in NTU, in Sheridan, there were external forces that caused the change in working conditions. There was no agency-initiated change that affected working conditions, and in those cases they found no change in the conditions of employment because, as the authority said in NTU, the threshold determination is, is there an agency-initiated change to a personnel policy practice and matter? So the authority's claim that they're trying to clarify what their precedent is makes no sense because that has always been what the authority's precedent is. The authority has always required the agency to take an action first to determine whether there's been a change in conditions of employment. Second, the authority's argument concerning... Let's go back to my hypothetical. There now are tens of thousands of people arriving at the border every day, and these agents or inspectors are overworked. Is the union entitled to bargain on the basis that the agency, by failing to hire more people, is increasing our workload to an extent that's intolerable? Under the authority's precedent, no, and that was the issue in NTU and IRS where there was increased demand from the public for taxpayer assistance. The union filed, you know, challenged it and sought to bargain over it. The authority said no. D.C. Circuit upheld that decision because the agency did not take an affirmative action to change a personnel policy or practice that caused the increase in workload. I see I'm over my time. If I may have just briefly to go over two more points real quickly. The authority's argument that the agency has modified the practice at the checkpoints and that there's never been any bargaining before is irrelevant to the case before us. The question here is whether the agency's action created an obligation to bargain. Did the agency change a personnel policy practice or matter affecting working conditions? And finally, with respect to the assignment of work, Your Honor, assignment of work is a management right that is not subject to substantive bargaining. However, it is subject to impact and implementation bargaining and appropriate arrangements under 7106B2 and 7106B3. If there's no further questions. Thank you. Thank you, Your Honors.
judges: Henderson, Srinivasan, Randolph